# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

REGIONAL CONSTRUCTION, L.L.C.    \*    CIVIL ACTION NO.  17-1014

VERSUS               \*    JUDGE ROBERT G. JAMES

CITY OF MONROE         \*    MAG. JUDGE KAREN L. HAYES

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, is a motion to dismiss for lack of subject matter jurisdiction, Federal Rule of Civil Procedure 12(b)(1), [doc. # 8] filed by defendant City of Monroe.  The motion is opposed.  For reasons assigned below, it is recommended that the motion be GRANTED, and that plaintiff's complaint be dismissed, without prejudice.

## Background

On August 10, 2017, Regional Construction, L.L.C. ("Regional") filed the instant complaint against the City of Monroe (the "City").  According to the complaint,

> [the] City elected to undertake a project to rehabilitate approximately 2300 feet of drainage piping located on the east side of runway 18-36 [of the regional airport facility] that began at the intersection of that runway and Taxiway D and continued south until the piping intersected with an abandoned runway on the south side of the airport ("Project") and there connected with an existing drainage pipe owned, operated and  maintained by the City . . .

(Compl., ¶ 6).

The City obtained funding for the Project through a grant-in-aid program, the Airport Improvement Program ("AIP"), administered by the Federal Aviation Administration ("FAA").

*Id*., ¶ 7.  Pursuant to the City's participation in the AIP, the FAA required that certain

provisions/specifications from the Code of Federal Regulations be incorporated into the Project contract. *Id.*, ¶ 8.

The City contracted with Denmon Engineering ("Denmon") to prepare the Project bidding documents and specifications. *Id.*, ¶ 10. On November 8, 2016, the City awarded the Project to Regional, and the City and Regional entered into a construction contract (the "Contract"), effective November 10, 2016. *Id.*, ¶¶ 14-15. Some time after March 20, 2017, Regional commenced work on the Project. *Id.*, ¶¶ 16-17.

As it began the excavation work, Regional quickly encountered significant amounts of groundwater that precluded the proper bedding of pipe and prevented its ability to backfill and stabilize the pipe. *Id.*, ¶ 20. Regional contends that the site condition was not reflected on the Project plans. *Id.*, ¶ 21. According to Regional, investigation revealed that the City interfered with Regional's performance under the Project by failing to maintain and clear the Outfall Pipe, thereby causing groundwater to back-flow into the Project. *Id.*, ¶ 22. Despite these findings by Regional and Denmon, neither the City, nor Denmon, took any steps to redress the differing site conditions. *Id.*, ¶ 23. The unfettered flow of water via the Outfall Pipe ultimately led to a work stoppage by Regional. *Id.*, ¶ 24.

After one month of work, Regional submitted its payment application for work performed and materials used in April based on percentages of completion pursuant to section 90-06 of the federal specifications incorporated into the Contract. *See* Compl., ¶ 25. The City approved Regional's April payment application in early May and advised that payment would be forthcoming. *Id.*, ¶ 27. However, the City never made the payment. *Id.* ¶¶ 27-28.

According to Regional, the City claimed that payment under the Contract could be made

only pursuant to sections 701-4.1 and 701-5.1 of the federal specifications, which provide for payment on the basis of linear feet of pipe in place, completed, and approved.  *See* Compl., ¶ 29; Advisory Circular, §§ 701-4.1 and 701-5.1; Response to M/Dismiss, Exhs. A & B.

Regional ceased work on the Project in mid-May when the City failed to remit the partial payment due for work performed in April.  *Id*., ¶ 31.  Regional also submitted an application for partial payment for the stored materials purchased and placed on the job site.  *Id*., ¶¶ 33-34.  The City, however, did not remit payment for the materials to Regional, and instead, paid Regional's suppliers directly.  *Id*., ¶¶ 35-36.

Because of the non-payment of the April payment application, Regional provided the City with requisite notice to terminate the Contract.  *Id*., ¶¶ 37-38.  Despite the notice, the City never paid any funds to Regional within the period specified by the Contract.  *Id*., ¶ 39.  After issuance of the notice of termination, the City rejected Regional's work performed under the Contract because the piping was not properly back-filled.  *Id*., ¶ 43.  The City also threatened Regional with liquidated damages under the Contract.  *Id*., ¶¶ 45-46.

Regional asserts two claims for relief in its complaint.  In its first claim, Regional argues that it properly terminated the Contract because of various breaches by the City, including:  its failure to make payment due under the April application; its failure to make partial payments pursuant to section 90-06 of the federal specifications incorporated into the Contract; its rejection of Regional's work without input from the project engineer; its decision to remit sums directly to Regional's suppliers instead of Regional; and because it wrongfully threatened assessment of liquidated damages.  (Contract, ¶ 47).  Regional seeks resulting damages.  *Id*., ¶ 48.

In its second claim for relief, Regional seeks damages for the City's failure to maintain

the "operability" of the Outfall Pipe. *Id*., ¶ 49.

On September 27, 2017, the City filed the instant motion to dismiss for lack of subject matter jurisdiction. Regional filed its response to the motion to dismiss on October 19, 2017. [doc. # 10]. It argues that its claims for relief arise under federal law because they require interpretation and reconciliation of conflicting federal specifications that were incorporated into the Contract. The City did not file a reply brief, and the time to do so has lapsed. *See* Notice of Motion Setting [doc. # 9]. Thus, the matter is ripe.

## Law and Analysis

It is axiomatic that federal courts are courts of "limited jurisdiction possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256, 133 S.Ct. 1059, 1064(2013) (citation and internal quotation marks omitted). Thus, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted). In other words, the party seeking to invoke federal court jurisdiction bears the burden of demonstrating its existence. *Howery, supra*.

"A court can find that subject matter jurisdiction is lacking based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Enable Mississippi River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 497 (5th Cir.2016) (citations and internal quotation marks omitted). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006,

1010 (5th Cir. 1998) (citation omitted).

In its complaint, Regional invoked the court's subject matter jurisdiction via the federal question statute, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.[1] "A case aris[es] under federal law within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief [under state law] necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689–90, 126 S.Ct. 2121, 2131 (2006) (citation and internal quotation marks omitted); *see also Enable Mississippi River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 498 (5th Cir.2016) (citation omitted). However, state law claims that confer federal jurisdiction represent a "special and small category" of cases. *Gunn, supra*. Accordingly, a state law claim will support federal subject matter jurisdiction only when the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn, supra*.

In its complaint, Regional stated that the court enjoys "arising under" jurisdiction because of alleged violations of the Federal Airport Act, 49 U.S.C. §§ 1101, *et seq*., and certain implementing regulations, 14 C.F.R. §§ 151.1, 151.49, 151.72. (Compl. ¶ 2). The regulations authorize grants to local authorities (sponsors) for improvement to airports, requiring each sponsor to enter into a construction contract for the airport development project and which must

---

[1] Plaintiff also cited the supplemental jurisdiction statute, 28 U.S.C. § 1367. However, supplemental jurisdiction is available only when the court has original jurisdiction over related claims – a precondition that is absent in this case. *See* discussion, *infra*.

contain certain provisions. *See* 14 C.F.R. §§ 151.7, 151.49, 151.72. However, plaintiff did not

identify any statute or regulation that authorizes a federal cause of action for breach of these

federally-mandated contract provisions. To the contrary, the regulations require the sponsor to

include language in the construction contract specifying that the United States is *not* a party to

the contract. 14 C..F.R. § 151.49. Moreover, although 49 U.S.C. § 1153 authorizes judicial

review of certain matters related to the National Transportation Safety Board, the instant dispute

does not appear to fall within that category. Certainly, had Congress intended to extend federal

jurisdiction to encompass contract-derived claims that include federally-mandated provisions

backed by federal funds, it would have been easy enough for it to say so. *See McVeigh, supra*.

Congress did not however, and on the present record, the court cannot derive from the cited

statutes and regulations any cause of action created by federal law.

     In the absence of a federal cause of action, plaintiff must demonstrate that it has a state

law claim that turns on a substantial question of federal law. Here, Regional plainly asserts state

law claims for breach of contract (and possibly negligence – at least insofar as the City had an

extra-contractual duty to maintain the "operability of the Outfall Pipe"). Regional identified the

federal issue as a conflict between two federally mandated provisions of the Contract. Regional

maintains that it is entitled to partial payment for the work it performed pursuant to section 90-

06.[2] Furthermore, according to Regional, the City contends that sections 701-4.1[3] and 701-5.1[4]

---

[2] Section 90-06 provides that,
[p]artial payments will be made to the Contractor at least once each month as the
work progresses. Said payments will be based upon estimates, prepared by the
Engineer, of the value of the work performed and materials complete and in place,
in accordance with the contract, plans and specifications. Such partial payments
may also include the delivered actual cost of those materials stockpiled and stored
in accordance with the subsection 90-07 titled PAYMENT FOR MATERIALS

provide the exclusive bases upon which payment can be made under the Contract. (Compl., ¶ 29).

The court is not persuaded that this federal issue satisfies all four criteria necessary to support the exercise of federal jurisdiction over a state law claim. First, Regional has not established that resolution of this federal issue is necessary. Upon review, it is manifest that the principal issue in this case is which party bears responsibility for the excess water that Regional encountered at the work site. Regional contends that the City is responsible. If so, then the issue of the amount owed Regional for the work it performed should resolve itself. Likewise, if the City owed a duty independent of the contract to maintain the "operability of the Outfall Pipe,"

---

ON HAND of this section. No partial payment will be made when the amount due to the Contractor since the last estimate amounts to less than five hundred dollars.

(Pl. Response, Exh. B).

[3] Section 701-4.1 provides that,

[t]he length of pipe shall be measured in linear feet (m) of pipe in place, completed, and approved. It shall be measured along the centerline of the pipe from end or inside face of structure to the end or inside face of structure, whichever is applicable. The several classes, types and size shall be measured separately. All fittings shall be included in the footage as typical pipe sections in the pipe being measured.

(Pl. Response, Exh. B).

[4] Section 701-5.1 states that,

[p]ayment will be made at the contract unit price per linear foot for each kind of pipe of the type and size designated; at the contract unit price per cubic yard of concrete for pipe cradles; and at the contract unit price per cubic yard for rock excavation.

These prices shall fully compensate the Contractor for furnishing all materials and for all preparation, excavation, and installation of these materials; and for all labor, equipment, tools, and incidentals necessary to complete the item.

(Pl. Response, Exh. B).

then Regional's damages may not be subject to the Contract's terms at all.

Second, Regional has not demonstrated that there is an actual *and* substantial dispute between the federally-mandated contractual provisions that it identified. Indeed, both sections 90-06 and 701-4.1/701-5.1 authorize payment for completed work. Moreover, section 90-06 requires the work to have been performed in accordance with the contract, plans, and specifications. According to the complaint, the City rejected Regional's work because Regional did not properly back-fill the pipe. (Compl., ¶ 43). Of course, Regional attributes its inability to backfill the pipe to the unforseen groundwater that it encountered. *Id.* Thus, again, the principal issue centers upon which party bears responsibility for the unanticipated groundwater encountered by Regional. Once that dispute is resolved, issues regarding sums due Regional should fall into place.

The court also emphasizes that for a federal issue to give rise to federal jurisdiction, the issue must not only be significant to the parties in the immediate suit, but also important to the federal system as a whole. *Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 723 (5th Cir.2017), *cert. denied sub nom. Bd. of Commissioners of Se. Louisiana Flood Prot. Auth. - E. v. Tennessee Gas Pipeline Co., L.L.C.*, 2017 WL 4869188 (U.S. Oct. 30, 2017). Here, the court does not discern any obvious or irreconcilable conflict between the sections identified by Regional, and therefore, it is unlikely that any resolution of the dispute will benefit the federal system as a whole.

Finally, Regional has not established that resolution of the tenuous federal issue embedded in this run-of-the mill breach of construction contract case would not upset the federal-state balance. Rather, exercising federal jurisdiction in this case would provide precedent

for the federalization of any contractual dispute that happened to incorporate federally-mandated provisions.  Courts have been reluctant to do so in analogous contexts.  *See e.g., Glovier v. Barton Homes, LLC*, 452 F. Supp.2d 657 (W.D. La. 2006) (consumer credit contract containing FTC Holder Rule notice); *Yellen v. Teledne Cont'l Motors, Inc.*, 832 F. Supp.2d 490 (E.D. Pa.2011) (aviation accident); *Teeples v. JPMorgan Chase Bank, NA*, No. 12-0795, 2013 WL 1898287 (E.D. Tex. Apr. 9, 2013), R&R adopted, 2013 WL 1898283 (E.D. Tex. May 7, 2013) (foreclosure suits); *HICA Educ. Loan Corp. v. Rodriguez*, 31 F. Supp.3d 351 (D.P.R.2014) (student loan defaults).  The same result obtains here.

In sum, "it takes more than a federal element to open the arising under door."  *McVeigh, supra* (citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313, 125 S.Ct. 2363 (2005)).  This case simply does not present the rare and special circumstance that authorizes the exercise of federal jurisdiction over a state law cause of action.[5]  Any state court where plaintiff re-files this matter is more than competent to resolve any conflict in the federally-mandated contractual provisions that may remain after resolving the principal issues in the case.

## Conclusion

For the reasons set forth above, the undersigned finds that plaintiff has failed to establish a basis for subject matter jurisdiction to support its claims against the City of Monroe.  Dismissal is required.  Fed.R.Civ.P. 12(b)(1).  Accordingly,

---

[5]  In *Grable* the Supreme Court authorized the exercise of federal jurisdiction over a state law quiet title action.  *Grable, supra.*  Since then, however, the Court has limited the reach of *Grable* by observing that it involved the action of a federal agency, and presented a pure issue of law that would govern numerous tax sale cases.  *McVeigh, supra.*  Those circumstances are not present here.

IT IS RECOMMENDED that the motion to dismiss for lack of subject matter jurisdiction [doc. # 8] filed by defendant City of Monroe be GRANTED, and that plaintiff's complaint be DISMISSED, without prejudice, in its entirety.  Fed.R.Civ.P. 12(b)(1).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 4th day of December 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE